You should keep track of your own time, but if you want us to kind of prod you about any rebuttal time, let us know, okay? Great. Thank you, Your Honor. I'll attempt to reserve two minutes for rebuttal, but I'll watch the clock. Very good. Good morning. May it please the Court, my name is Harini Ragupathy from the Federal Defenders of San Diego, on behalf of the appellant, Mr. Rodriguez-Sifuentes. There were exceptional circumstances, and it was in the interest of justice for Mr. Rodriguez to be able to conduct depositions of his common-law wife and stepson, where their status as foreign nationals and their unwillingness to enter the United States rendered them unavailable, and where their testimony would have materially supported the only disputed element, which was Mr. Rodriguez's intent to enter the United States. The District Court's ruling to the contrary was an abuse of discretion. First, the information that was contained in the publicly available record was sufficient to establish the witness's unavailability. And according to that publicly available information, both witnesses were foreign nationals, and they were therefore beyond the subpoena power of the United States. Mr. Rodriguez's common-law wife refused to enter the United States because she had an outstanding arrest warrant, and she feared being arrested upon entering the country. Wouldn't that same problem have occurred had she appeared at a consulate or the United States Embassy in Mexico? Perhaps, Your Honor, but there's no indication that the deposition would be required to be taken at a consulate or embassy, but that is a reason that she gave for her refusal to come into the United States. And what is it exactly that your client made as a proffer as to what would be said? The proffer was contained in his application for the Rule 17b subpoenas, and that proffer was that the family would testify that they were with Mr. Rodriguez on the day of his arrest, that the family regularly sold candy in the vehicle lanes at the port of entry, that Mr. Rodriguez went with his family to the port of entry that day, and he never made any indication he wouldn't return with them that night. Do you know why the proffer didn't say anything about schizophrenia? I don't, Your Honor. I think I don't have information as to that. But Your Honor is correct that Mr. Rodriguez, as is evident from the PSR, has significant mental health considerations, but that was not something that ultimately the jury heard, and that was submitted at trial. But the proffer that was made, I think, was undoubtedly material because it went to what this court has called the gravamen of the attempted illegal reentry offense, and that is that Mr. Rodriguez never intended to enter the United States. Had his family been able to testify, it would have given him an innocent, legitimate, non-criminal reason for being in the vehicle lanes at the port of entry and would have shown that he was there because that's where he worked, that was part of his daily routine, it wasn't because he was trying to enter the United States. And once that testimony did not come in, then Mr. Rodriguez was essentially forced to shift his defense to present a much more legally difficult, a convoluted defense, as this court is probably aware of from the Rule 29 motion, from the shifting jury instructions, which was that he didn't have the intent to enter free from official restraint, which, again, is a much more difficult concept. So I think that the district court abused its discretion in finding that the witnesses were unavailable because, again, they refused to enter the country and they couldn't be compelled to enter. Could the son have had a deposition or entered without the mother? So the mother had this arrest warrant, but the son didn't, right? The son didn't have an arrest warrant, but what was proffered on the public record was the son was unwilling to come to the United States to testify. So the reason for that unwillingness wasn't part of the publicly available information, but ultimately I think the reason for his unwillingness is irrelevant to the unavailability analysis because that analysis focuses on the good faith efforts of the moving party. And so regardless of his reason, he wasn't willing to come in, and there was nothing more that Mr. Rodriguez could do to attempt to compel his appearance in the country. So is it your position that the district court judge made a legal error by thinking that more was needed than unwillingness? I think that is part of our position, that the district court thought that the reason for the unwillingness necessarily has to be on the public record. Right, so it sort of seems like there's two issues. Maybe you're arguing that the problem was the insistence against ex parte proceedings. Another thing could just be thinking that the reason for unwillingness matters at all, totally aside from that, right? I agree. I think that there's two errors. One is that the district court had a more demanding definition of unavailability than is supported by the case law, and then the second reason was that the district court excluded this information that was ex parte. The material in the publicly supported record was sufficient. The facts were sufficient to establish unavailability. Well, even beyond the unavailability, let's put that aside for a moment. What troubles me is that your client didn't summarize the anticipated testimony, so how was the district judge supposed to be able to determine whether the testimony would have been relevant in any way? Well, I think that the summary of the scope of the anticipated testimony came in the Rule 17b application, which was referenced in the motion for Rule 15 depositions, and so there was an affidavit by counsel essentially describing what the witnesses would have testified to, and that was incorporated into the Rule 15 motion, and counsel made that reference also during the Rule 15 hearing. Both twice during the Rule 15 hearing, counsel referenced the fact that these witnesses were subject to subpoena, and the district court ultimately granted the subpoenas, and in granting the subpoenas, it at least implicitly recognized that these witnesses were material because Rule 17b has a necessity component that the witness's testimony has to be necessary to the defense. Well, you're saying that the evidence to which I'm making reference was incorporated by reference from another document? Correct. Okay. Was that called to the attention of the district judge? It was. At the Rule 15 hearing, there was twice in the record where Mr. Rodriguez referred to the fact that he was incorporating his Rule 17b subpoenas, and that was on page 2 of the ER as well as page 5 of the ER. And then also on page 54, the actual Rule 15 motion, Mr. Rodriguez dropped a footnote indicating that the witnesses he was attempting to depose were the same witnesses that he was attempting to subpoena. So the two motions essentially cross-referenced each other. What about the local Rule 47.1g1 that wasn't complied with? Well, I think I have two responses to that, Your Honor. One is that the district court itself was never concerned that counsel wasn't making these representations via an affidavit or a declaration, and so when this court is reviewing for abuse of discretion, it's necessarily reviewing the actual decision the district court made. And the district court here took counsel's words at face value. And then secondly, the case law suggests that there's no requirement in Rule 15 that any of the allegations have to be made via an affidavit or declaration. The Fifth Circuit in Far Foncaria and the Eleventh Circuit in Drobo have explicitly said counsel can make representations orally in open court as to both unavailability and materiality, and that there should be no reason to, unless the government can specifically point to reasons why that oral representation is untrustworthy, there should be no requirement of an affidavit. So if you're correct about your position, what do you want this court to do? I think the remedy here would be to vacate Mr. Rodriguez's conviction and to remand to the district court to order the depositions, essentially to order for retrial with a grant, order to grant the depositions. Has something changed that allowed you to unseal the ex parte transcript now? I thought this court might ask that question, and I think that at the time of the trial, trial counsel was especially sensitive to the concerns of the witnesses about their fears of being arrested and being deported back to Central America and separated from Mr. Rodriguez. I don't think anything has actually changed, but I think that trial counsel at the time was extremely sensitive to those concerns and was in direct contact with the witnesses. There's nothing in the record to suggest the witnesses wanted that information to be ex parte, but it seems everything suggests that those witnesses were really reluctant to have that information put on the public record. I'm not sure what transpired in the interim in allowing the district court to unseal those documents, but I just know that it was a concern to which the witnesses were particularly sensitive at the time. So one way that I think that I've struggled with to try to understand what the district court did here, one reading might be that the district court thought he couldn't really tell if the witnesses really were going to insist on being unavailable unless there was some kind of negotiation with the government, and keeping the information ex parte prevented that kind of negotiation. And I'm wondering if the fact that later they seem to think it's okay to reveal the information sort of shows that a negotiation might have been fruitful. Can you respond to that concern? Well, the unsealing came after Mr. Rodriguez was ultimately sentenced, so I don't think that the unsealing had any bearing on the district court's unavailability ruling. That was after the fact, but I think that ultimately this court is focusing, one of the elements of exceptional circumstances is unavailability, but I think this court has to focus on the fact that all Mr. Rodriguez is trying to do is take depositions to preserve testimony for trial, and that's separate and apart from the actual admission of the depositions into evidence at trial, where a much more conclusive showing of unavailability would be required. And the reason for that is because he has up until the time of trial to engage in those negotiations with the government to attempt to convince the witnesses to come into trial. So Rule 15 is essentially a preliminary mechanism that simply allows for the preservation of testimony, and I think looking at it from that lens, the showing of unavailability at the initial stage of taking the depositions is reduced. I see my time is up. If I may resume. Well, let's do this. Let's hear from the government. We'll give you a little time to respond. Thank you very much. All right. Thank you. Good morning. May it please the Court. Helen Hong on behalf of the United States. The district court did not abuse its discretion in denying the foreign depositions in this case, and I want to address a question that you asked Judge Friedland, which is whether the district court had legally erred in requiring a more stringent definition of unavailability than that is required. I don't think that that's the case here. What the district court did was identify that the reasons for the witness's unwillingness to testify mattered, and that's based on the representations that counsel made that showed that the unwillingness to testify or to come to the United States was equivalent. If you look at the statements that Mr. Rodriguez's attorneys made on ER 15, the attorney said that our fear is that if they are paroled in and they testify, then they may have to be deported. It wasn't a conclusive or it was a contingent fear. That is contingent on the fear that Mexico would deport these individuals or that the United States would have to deport these individuals. But that's contingent, right? I mean, it's only possible that they'd actually be deported, but that doesn't mean their unwillingness is only possible. I mean, if they're saying we're unwilling to come because of the possible risk of being deported, what case do you have that says that unwillingness can't be enough? And I don't think that that's what was represented. I think what was represented was something more political, which is, for example, ER 17, the attorney said, I think. Yeah, I know there's that I think. It's sort of inconsistent with the end of the sentence, though, that makes it sound like they really were unwilling to come. Right, but I think the judge was appropriate to request that the parties engage in a negotiation process to determine whether the fears would actually come to pass. But that's the thing that I am struggling with is whether what the judge was doing is sort of saying before I rule on this, I'm going to require the parties to try to settle this on their own. That seems like a kind of thing district court judges do a lot and maybe is within discretion and maybe that's what this judge was doing. But it's also possible the judge thought you needed a higher standard of unavailability. It's also possible he thought that unwillingness is not enough. I mean, there are a lot of other things you might have thought is really hard to tell. And I think what the record shows, though, is it wasn't a more heightened or stringent standard of unavailability that the court was focused on. But the former option that Your Honor has identified, which is parties get together and figure out if this is truly a problem. Because if this isn't a problem, then it may be that one, the United States may agree that depositions are appropriate in this case. Or two, it may be that under absolutely no circumstances could the United States participate in this sort of charade. And that's really what Mr. Rodriguez was requesting. If you look at this not in the lens of unavailability, but in whether the interests of justice supported this, what Mr. Rodriguez was asking for was a judicial order that essentially was sanctioning unlawful conduct in a foreign sovereign's land where the United States government would go and conduct official business without telling Mexican authorities that they were doing that deposition solely to aid individuals who were unlawfully residing in that country. It can't be that that is in the interest of justice. Those types of sensitive issues of international relations. But the fugitive cases are in conflict with that, right? I mean, isn't the defendant's right to the defense going to trump that kind of argument? And the fugitive cases were involving individuals who were fugitives of the United States, not fugitives in the land that they were being deposed. So if you look at the Ingeris case, for example, the individual who was supposed to be deposed was a fugitive from the United States residing abroad. I have not come across any case where the fugitives were fugitives of the country in which they were actually residing, where the United States would go to depose that individual. So again, what Mr. Rodriguez has asked us to do is essentially judicial sanctioning of a charade where we would agree that Mexican authorities should not be alerted about unlawful individuals. Isn't this argument in tension with what was made in the district court, though? It seems like the argument I understood before the government to be making was we would have been able to take. These people weren't really unavailable. They could have come here, but that would be the same charade, right? I mean, if they can come, then that's because you're not going to really report it. And now you're saying you would have to report it. So I don't understand. No, it's not a conclusive we would have to report it. It's the transparency in the process, whether the interest of justice supports transparency in the process. The United States, the government at least, was in the dark about why these individuals refused to come to the United States. The court was in this untenable position where it now knew that what Mr. Rodriguez was asking was a judicial order that allowed the United States to conduct official business on foreign soil in order to aid those individuals in engaging in illegal behavior. Putting that aside from that kind of the grand scheme, but in this particular case, his intention is key, is it not? Yes, Your Honor. So if they're correct and if the district judge abuses discretion, what does the government think should be done? If the district court did abuse discretion, the United States would agree in this case that, you know, if the testimony were material and the depositions should have been conducted, then a new trial should be afforded. So you agree with that as well. So what we're really dealing with here is a record that has people going every which direction, changing stories, going here and there, and then we end up with a high-level diplomatic concern. Well, and we don't even need to invoke those high-level diplomatic concerns to show that the district court didn't abuse its discretion. And that's because the materiality and the scope of the witness's testimony was nothing that was actually identified to the court at the time it was ruling on the motion. Do you agree, does the government agree with opposing counsel that the required proffer was indeed made as part of the Rule 15 and 17 submission that was incorporated by reference? Well, they're separate submissions. So the Rule 17 submission was submitted on March 12th of 2013. The Rule 15 motion came in the context of motions in Lemonhead weeks later, I believe it was March 20th, heard at a hearing on March 28th. You're saying that the district judge would not have had the material before him when he made this ruling? The district court was not focused on what Mr. Rodriguez had identified in the Rule 15 motion. It was never incorporated by reference. So the incorporation by reference occurred later after the decision was made? No, Your Honor, I don't think there was an incorporation by reference at all. There was a reference and an allusion to the fact that a prior Rule 17 subpoena request had been submitted, but neither the actual motion itself nor the comments of attorneys at the hearing specifically incorporated those comments. And when the district court ruled at the second continued hearing on the motions, the district court stated that it was not in a position to determine whether or not the testimony is material. That reflects the district court's understanding that none of the materials from the Rule 17 request had been incorporated by reference. And the burden on that is on the petitioner, right? Yes, Your Honor. But Footnote 1 in the application for the depositions references the Rule 17b. That's correct. It references the Rule 17b. It states that the Rule 17b subpoenas had been submitted, and it came in the context of a sentence where Mr. Rodriguez's attorneys highlighted that they had made those subpoena requests. I mean, so yes, you're right, but the next sentence is these witnesses' testimony is material. So it's really, I mean, it's very close to referencing the other document in that paragraph that's about both. Correct, but there was nothing that specifically incorporated it, one. And two, the district court can't be charged with imputing what was in the Rule 17 request for two reasons. One is it was ex parte. Again, there was no public airing of the materiality and the contours of the witnesses' testimony. Rule 17 specifically provides for ex parte treatment of information for subpoenas in order to level the playing field between indigent or those able to pay and those not able to pay. Rule 15's playing field is the same whether one has the ability to pay or not. The moving party, whether indigent or not, must establish that the interests of justice in exceptional circumstances support the taking of a deposition. But the judge never said that his concern about materiality was that this was ex parte. In the first hearing, the judge did say that it was not going to be considering any ex parte material at all. So at the first hearing, the district court told and informed the attorneys that it would not consider any ex parte submissions in determining whether a deposition was appropriate because he believed that public airing and adversarial litigation process was appropriate. But that discussion was focused on the unavailability issue, right? That was focused. It was actually in the abstract. The parties had not fully engaged in the unavailability analysis that came at the continued hearing. So Mr. Rodriguez's attorneys were certainly on notice that the district court was not going to be considering ex parte submissions. And in this context, it makes sense because not only do we know from later materials, PSR, that the witnesses may not have actually said what was provided in the proffer, but there was also material that the United States could have exploited to determine whether the testimony was in fact material. So SER 347 is, oh no, excuse me, Exhibit 5 to Criminal Record No. 51. That's the DVD of the post-arrest statement that this court requested from the United States. At the conclusion of that post-arrest statement, Mr. Rodriguez was afforded the opportunity to make a phone call. And the phone call that he made was to his wife and to his son. And the phone call is in Spanish, and it's at the conclusion of that DVD. But I think it bears on whether the United States could have actually challenged whether the witnesses would have said what they would have said. And that's because in that phone call, Mr. Rodriguez states and tells his common law wife, I have been awake from 6 a.m. this morning until 9 p.m. The discussion was as if he had not seen his wife at least after 6 a.m., which undercuts the claim that the witnesses would state they were with him during the day, which is the proffer that was provided in the 17B submission. And really shows why in this instance it was important for the United States to have the opportunity to litigate this motion. Your time is up. Let me ask my colleagues if either has any further questions of the government. Thank you very much. Thank you. We're going to give you a brief chance to rebut if you like. If you don't want it, you don't have to have it. But do you want any time to rebut? Yes. Okay. Why don't we do a minute and a half, okay? Just a few points, Your Honors. Regarding whether the Rule 17B motion was incorporated into the Rule 15, as Judge Friedland pointed out, there was a footnote in the motion itself on ER 54. And then at the hearing on the Rule 15B subpoenas on pages ER 2 and ER 5, the defense counsel specifically references the fact that these witnesses were subject to a Rule 17B subpoena. So our position is that they were incorporated into each other. Counsel, can I ask you one question? So what information that goes to materiality was put on the public record? Anything? There was no information on the public record regarding materiality. It was all made in the Rule 17B application. So tell me why we shouldn't conclude, then, that the district court was entitled to decide that, you know what, I'm not going to consider any information relating to any of this that's not put on the public record. Your client put nothing on the public record relating to materiality, so therefore the district court, by definition, couldn't have abused its discretion by finding that prong not satisfied. I think the Criminal Justice Act 18 U.S.C. section 3006AE1 provides that defense counsel may request any other services necessary to the presentation of defense in an ex parte fashion. And so I think that provision of the Criminal Justice Act supports the use of the ex parte declaration to make the Rule 15 materiality proffer. The district court, Rule 17, of course, allows a defendant to make an ex parte representation. I'm with you on Rule 17, but I think the government's right that when you're talking about Rule 15 and going to a foreign country to conduct a deposition, doesn't the calculus change? And at that point, I look at the Rule 17 proffer as to why this testimony was material, and I don't really see anything that justifies keeping that under seal. But that's what I wanted you to speak to. Why was it so critical that that information not be disclosed to the government so that there could be some adversarial testing as to whether materiality was met? Well, as I pointed to, I think that provision of the Criminal Justice Act I cited suggests that defense counsel doesn't need to make a premature disclosure of their case to the government, and that would be the reason why that information could be proffered ex parte. And then as to any concerns about contradictions in the witness's testimony, that's something that the government could explore on cross-examination at the depositions, and that's something that the government would be free to argue in closing argument to the jury. That essentially goes to the credibility and the weight that the jury should accord those witnesses' testimony. So let me make sure I understand your position. Your position is that, and I'd like to know if we have cases that say this, that in the Rule 15 context, in a criminal case, the defendant never has to disclose anything that relates to materiality because it will always be material that the defense, you know, obviously doesn't want to tip the defense's hand to the government. There never will be adversarial testing as to materiality. That's what you think is the law? I wouldn't go so far as to say that. I would just say that on this case, it was proper for Mr. Rodriguez to be able to make his representation ex parte under the law. But why, there's nothing, that's what I'm saying. I look at the information that's in the Rule 17 application because that's the only thing you've pointed us to, right? That's the only thing that the district court was ever advised of. And I just don't see, I mean if you're saying this case is special and that information was so critical that it be withheld from the government, I'd like to hear why. But otherwise, what I'm hearing you say is that the Criminal Justice Act allows us not to have to disclose the anticipated testimony to the government and that's why the district court abused its discretion by not taking that information into account. That is our position, and this court hasn't, as far as I know, addressed that issue, but both the 8th Circuit and the 10th Circuit have. In United States v. Ray, the 8th Circuit indicated that a defendant could make an ex parte application for both Rule 17b subpoenas as well as Rule 15 depositions. And then in a case whose name is escaping me right now, but it's cited in my briefs, it's the 10th Circuit case. The 10th Circuit cited to that provision of the CJA the 18 U.S.C. section 3006a and said that that would be a reason for depositions being, the proffer regarding depositions being made in an ex parte fashion. So we would ask the court to adopt the reasoning of the 8th and 10th Circuits from those cases. Okay. Go ahead. Any further questions? No, that's it. Thanks. Further questions? We thank both counsel for your arguments. Thank you very much. It's very, very helpful. The case just argued.
judges: M. Smith, Watford, Friedland